# Supreme Court of Louisiana

The Opinions handed down on the **3rd day of April, 2020** are as follows:

**PER CURIAM:**

2017-B-02155      IN RE: CALEB KENT AGUILLARD

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Caleb Kent Aguillard, Louisiana Bar Roll number 32087, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that this suspension shall be deferred in its entirety and that respondent shall be placed on unsupervised probation for a period to coincide with the term of his recovery agreement with the Judges and Lawyers Assistance Program. Respondent's probation shall be conditioned on full compliance with the terms of his JLAP agreement. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Retired Judge James H. Boddie, Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

SUPREME COURT OF LOUISIANA

NO. 2017-B-2155

IN RE: CALEB KENT AGUILLARD

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM[*]

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Caleb Kent Aguillard, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

*The Trust Account Matter*

On February 18, 2015, a debit card purchase in the amount of $181.43 was paid from respondent's client trust account, causing the account to become overdrawn. On February 19 and 20, 2015, the payment of additional debit card purchases in the amounts of $11.00, $34.00, and $9.27 caused the account balance to become further overdrawn.

Following a review of six months of trust account bank records, the ODC determined that respondent had not intentionally converted any client funds; rather, he misused his trust account by maintaining personal funds in the account and allowing the account to be used for personal transactions.[1]

---

[*] Retired Judge James Boddie Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

[1] Respondent's business debit card was apparently connected in error to his trust account for a short period of time when the charges were made. The error was corrected when respondent contacted his bank and replaced the funds that had been taken from his trust account.

*The Robinson Matter*

In December 2014, Cindy Robinson retained respondent to handle her divorce. The fees paid by Ms. Robinson included $250 for consultation, $310 for court costs, and a $7,500 retainer. Respondent prepared and subsequently filed the divorce petition. However, at Ms. Robinson's request, her husband was not served with notice of the filing.

In January 2015, the Robinsons reconciled. Respondent and Ms. Robinson scheduled a meeting in order to close the file and return the unearned fee. Ms. Robinson canceled the first appointment and respondent canceled the next two scheduled appointments. Thereafter, Ms. Robinson made several attempts to contact respondent, to no avail. Her attempts included calling respondent's personal telephone number and visiting the office where respondent shared space with attorney David Carriere. Respondent eventually responded to Ms. Robinson's calls in February 2015 and informed her that he was in the process of closing his law practice because he was ill. Ms. Robinson was not able to contact respondent again until March 16, 2015, when he informed her that he was on his way to his office to finish closing out his files and that she would be hearing from him by the end of the day. Ms. Robinson was next contacted by Mr. Carriere, who informed her that respondent had dropped off his office key and that she could come and pick up her file. On March 18, 2015, Ms. Robinson spoke to respondent, at which time he advised her that he was consulting with the bank regarding the return of the unearned fee. When Ms. Robinson did not hear further from respondent, she filed a complaint against him with the ODC on March 23, 2015.

In his reply to the complaint, dated May 27, 2015, respondent acknowledged the facts as related by Ms. Robinson, including the fact that she paid a retainer fee of $7,500 and that she was due a refund. On September 21, 2015, Ms. Robinson contacted the ODC and acknowledged receipt of a full refund of the fee she paid.

2

*The Keller Matter*

Crystal Keller initially retained respondent to defend her in a suit for grandparent visitation rights filed by her deceased husband's mother, Becky Boutte. Following the proceedings, Ms. Boutte was granted visitation with her grandchildren. In December 2014, Ms. Keller paid respondent $2,500 to pursue contempt charges against Ms. Boutte.

In April 2015, Ms. Keller filed a complaint against respondent with the ODC. Ms. Keller alleged that respondent failed to communicate with her during the representation, failed to complete the representation and, thereafter, failed to refund any unearned fee.[2] In December 2015, respondent sent Ms. Keller a cashier's check in the amount of $2,500, representing a full refund of the fee she paid.

*The Huval Matter*

In January 2015, Carlan Huval retained respondent to handle his divorce. The fees paid by Mr. Huval included $250 for consultation, $350 for court costs, and a $4,400 retainer.

In a letter to respondent dated March 24, 2015, Mr. Huval confirmed the termination of the representation as of February 25, 2015 and requested a detailed accounting and the return of any unearned fees. In a letter to respondent dated April 2, 2015, attorney David Carriere informed respondent that Mr. Huval had retained him for representation regarding the divorce. On behalf of Mr. Huval, Mr. Carriere requested a final accounting and the refund of any unearned fees. Respondent failed to respond to the request of either Mr. Huval or Mr. Carriere.

---

[2] Ms. Keller also filed a police report, and a warrant was issued for respondent's arrest on a charge of felony theft. Respondent was subsequently accepted into the District Attorney's Pre-Trial Intervention Program. He completed the program in February 2016.

On April 10, 2015, as a result of respondent's failure to return the unearned fees, Mr. Carriere filed suit against respondent on behalf of Mr. Huval. By letter dated November 16, 2015, Mr. Carriere advised the ODC that the matter had been resolved to Mr. Huval's satisfaction.

**DISCIPLINARY PROCEEDINGS**

In December 2015, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third persons), 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client), and 8.4(a) (violation of the Rules of Professional Conduct).

Respondent answered the formal charges and admitted his misconduct, but requested a hearing in mitigation. Respondent indicated that he closed his law office in February 2015 – and assumed inactive status with the Louisiana State Bar Association ("LSBA") on May 22, 2015 – because an acrimonious divorce and difficulties in his career had impacted his health, causing him to suffer from clinical depression, acute anxiety, and alcoholism. He further stated that in August 2015, he successfully completed a three-month inpatient treatment program for his alcoholism at the Home of Grace, a faith-based addiction recovery program located

4

in Vancleave, Mississippi.[3]  Finally, respondent indicated that he had repaid all fees to his clients in full.[4]  The matter was then set for a hearing.

*Mitigation Hearing*

The hearing committee conducted the hearing in December 2017.  Respondent testified on his own behalf and on cross-examination by the ODC.  Respondent also called the following witnesses: his AA sponsor, Cleveland Michaud, Jr., who works as a pharmacist; his pastor, Tim Moffitt of the First Baptist Church of Eunice; and his father, attorney H. Kent Aguillard.  The ODC called J.E. "Buddy" Stockwell, III, the Executive Director of the Judges and Lawyers Assistance Program ("JLAP"), to testify before the committee.

*Hearing Committee Report*

Following the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above.  Based on those facts, the committee determined respondent violated the Rules of Professional Conduct as charged.  Additionally, the committee found the following:

Having admitted to violating the Rules of Professional Conduct as charged by the ODC, respondent sought to mitigate any sanctions by claiming that he was an alcoholic.  Respondent, who had been married to a substance abuser and was

---

[3] Respondent's father chose the Home of Grace facility for its faith-based program and because it boasted a higher rate of success than secular recovery programs nationwide.  Respondent acknowledged that the Home of Grace program was not overseen by a medical doctor and that his counseling was provided by a "reverend minister."  He further admitted that he was drug tested only once during his three-month stay at the Home of Grace.

In September 2015, the ODC referred respondent to the Judges and Lawyers Assistance Program, which provided him with the names of six facilities where he could go for an evaluation.  Respondent refused to participate at that time.

[4] Respondent was able to reimburse the fees to his clients by obtaining a loan from his father.  His father testified that the loan was not repaid "in terms of dollars," but to some extent "in services" provided by respondent at his law firm.

involved in custody proceedings with his former spouse and a separate proceeding with her new boyfriend, appears to have reached a low point sometime around February 2015. He moved in with his parents, closed his law office, and voluntarily applied for LSBA inactive status, which became effective on May 22, 2015.

On June 3, 2015, respondent was admitted to the Home of Grace for treatment of his alcoholism. He completed the program on August 28, 2015. There were no medical doctors who participated in the program; rather, respondent was counseled by a minister. Following his completion of the program, respondent has been involved in AA. Mr. Michaud, respondent's AA sponsor, testified that respondent regularly attends meetings, counsels others struggling with alcoholism, and has remained sober. Mr. Michaud acknowledged that he had no specialized training in any type of alcohol or substance abuse issues.

Pastor Moffitt of the First Baptist Church of Eunice described how respondent had become a regular member of the congregation, fully involved in church activities. He further testified that he would be aware if respondent were to return to the use of alcohol. Pastor Moffitt took at least one counseling class in his doctoral ministry program and had a number of years as an experienced pastor, but admitted he was not an expert in substance abuse.

At the time of the hearing, respondent was employed by his father, who is a solo practitioner in Eunice. Respondent drafted pleadings, performed legal research, and ran errands. His father expressed a preference for respondent to continue to practice with his law firm.

The committee also heard the testimony of Mr. Stockwell, the director of JLAP. He stated that persons engaged in safety-sensitive occupations, such as lawyers, should be subjected to evaluation and treatment at a higher level than members of the general public due to the harm that can be inflicted upon clients and the general public in the event of impairment. While noting that respondent sought

6

to quickly gain control of his addiction to alcohol by voluntarily enrolling at the Home of Grace, it was Mr. Stockwell's opinion that the Home of Grace facility did not meet the treatment standards observed by JLAP. For example, Mr. Stockwell noted that there was no evidence that respondent was treated by a licensed therapist, psychologist, or psychiatrist while at the Home of Grace, that he has ever been properly diagnosed by a licensed medical professional, or that he has ever had medical professional medication management. For these reasons, Mr. Stockwell could not endorse respondent's sobriety.

The committee found that respondent knowingly violated duties owed to his clients and the legal profession. His refusal to remit unearned fees to his clients in a timely manner had the potential to harm his clients financially. The baseline sanction for respondent's misconduct ranges from reprimand to disbarment.

In aggravation, the committee recognized the following factors: a pattern of misconduct and indifference to making restitution. In mitigation, the committee recognized the following factors: absence of a prior disciplinary record and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings. The committee rejected the mitigating factor of chemical dependency, finding a lack of medical evidence to support respondent's claim that his alcoholism caused the misconduct, or that he has obtained recovery from his addiction by a meaningful and sustained period of successful rehabilitation.[5]

Under these circumstances, the committee recommended respondent be suspended from the practice of law for thirty-six months, with eighteen months

---

[5] In order to prove the mitigating factor of chemical dependency, ABA Standard 9.32(i) provides the lawyer must prove the following four factors by clear and convincing evidence: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. *See In re: Stoller*, 04-2578 (La. 5/24/05), 902 So. 2d 981.

7

deferred. The committee recommended that the suspension be made retroactive to May 22, 2015, the date respondent assumed inactive status with the LSBA.[6] Furthermore, the committee recommended that respondent be placed on probation and that his reinstatement be conditioned upon his entering into an agreement with JLAP, undergoing a full and complete assessment, and completing treatment at a facility acceptable to JLAP.

The ODC filed a brief with the disciplinary board asserting that respondent should be suspended from the practice of law for one year and one day, with no portion of the suspension deferred. In his pre-argument brief, respondent argued that the appropriate sanction in this case is a fully deferred one year and one day suspension.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous, and that the committee correctly applied the Rules of Professional Conduct.

The board determined respondent violated duties owed to his clients and to the legal profession. He knowingly caused harm to his clients by delaying their legal matters, failing to timely respond to their requests for information, and failing to timely refund unearned fees, which deprived his clients of their funds for several months. Respondent also negligently mishandled his client trust account and failed to maintain the proper accounting records. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the applicable baseline sanction is suspension.

---

[6] Supreme Court Rule XIX provides a mechanism for retroactive application of a suspension (or disbarment) after a lawyer is placed on interim suspension; however, no mechanism is available in Rule XIX for retroactive imposition of discipline based on LSBA inactive status.

The board adopted the aggravating and mitigating factors found by the hearing committee. In addition, the board found the mitigating factor of imposition of other penalties or sanctions. Relative to the Keller matter, respondent was required to address a criminal complaint filed against him, and in the Huval matter, respondent faced a civil suit filed by his client.

Turning to the issue of an appropriate sanction, the board determined that the three-year suspension, with eighteen months deferred, recommended by the hearing committee is unduly harsh. The board pointed out that respondent did not act with a dishonest or selfish motive and has made full refunds to his three clients. Under these circumstances, the board concluded that a one year and one day suspension, fully deferred, seems more appropriate for the misconduct at issue.

The board next considered the imposition of conditions on respondent's reinstatement. In its consideration of mitigating factors, the committee declined to find that respondent's misconduct occurred as a result of his alcoholism. Nevertheless, respondent admitted that he had an issue with alcohol. The committee determined that as a condition of reinstatement, respondent should be required to enter into a contract with JLAP, submit to a full assessment, and complete treatment at a facility acceptable to JLAP. The board agreed that respondent should enter into a contract with JLAP, but determined it was not necessary for respondent to undergo an evaluation and treatment at this time.

Based on this reasoning, the board recommended respondent be suspended from the practice of law for one year and one day, fully deferred. The board also recommended that respondent "enter into a monitoring contract with JLAP to assure his continued abstinence and attendance at AA or other support group meetings for a period of three years," that he obtain ten hours of continuing legal education in law office management, and that he pay all costs of this disciplinary proceeding.

9

One board member concurred in the board's recommendation, except that she would recommend respondent be evaluated by a JLAP-approved provider in addition to being monitored by JLAP.

Neither party filed a timely objection to the disciplinary board's recommendation. However, on our own motion, we docketed the case for briefing and oral argument.

The matter was initially set for oral argument on our September 2018 docket. On August 14, 2018, respondent's father sent a letter to the ODC indicating that respondent was undergoing substance abuse treatment at the Home of Grace and would not attend the oral argument. The ODC subsequently forwarded a copy of the letter to this court. Thereafter, on our own motion, we removed the case from the September 2018 docket and held the matter until respondent was available to participate in oral argument. The case was then re-scheduled for oral argument on the May 2019 docket.[7]

During oral argument, respondent admitted that he had relapsed in 2018. As a result of his relapse, respondent returned to the Home of Grace for treatment. He maintained that he successfully completed this program in November 2018.

*Interim Order of the Court*

Following oral argument, we issued an interim order on May 20, 2019 which provided, in pertinent part:

> IT IS ORDERED that within thirty days of the date of this order, respondent shall submit to a substance abuse evaluation at a facility approved by the Judges and Lawyers Assistance Program. Following the evaluation,

---

[7] On May 22, 2019, following oral argument, respondent filed a motion to supplement the record with copies of the results of drug tests administered in 2018 and early 2019 by the Home of Grace and by several third-party laboratories in connection with a custody dispute. The ODC opposed the motion. As none of these tests screened for alcohol consumption, respondent's drug of choice, we find the test results are not relevant to this matter. Accordingly, we will deny respondent's motion to supplement.

> the parties shall cause a copy of the report of the evaluation to be filed in this court as soon as practicable.
>
> IT IS FURTHER ORDERED that the record of this matter shall be held open pending the filing of the report of the evaluation. The parties may file supplemental briefs addressing the report within ten days of the filing thereof.

On June 17, 2019, respondent submitted to a three-day evaluation at the Professionals' Wellness Evaluation Center ("PWEC") in Alexandria, a facility approved by JLAP. The results of the evaluation revealed that respondent meets DSM 5 criteria for alcohol use disorder, severe (in sustained remission), major depression, and borderline and narcissistic personality features. PWEC recommended that respondent contact JLAP as soon as possible to facilitate his enrollment in an intensive outpatient treatment program at a JLAP-approved facility that is familiar with treating the professional population, complete the program, and then sign a five-year JLAP recovery agreement. PWEC also recommended that respondent (1) abstain from alcohol and all non-authorized mood altering substances, (2) refrain from use of potentially addictive substances, including those prescribed for any mood/anxiety disorders or pain treatment, (3) attend AA/NA meetings at least three times weekly during the term of the JLAP recovery agreement, and (4) establish a therapeutic relationship with a male psychiatrist to address his ongoing personality issues and depressed mood.

On July 15, 2019, in accordance with the recommendation made by PWEC, respondent enrolled in an intensive outpatient treatment program at Palmetto Addiction Recovery Center ("Palmetto"). Respondent successfully completed the program on August 22, 2019. His final diagnoses were alcohol use disorder, severe, in remission, and borderline and narcissistic personality features. On September 5,

2019, respondent executed a five-year JLAP recovery agreement.[8] Respondent is currently in compliance with his JLAP agreement.[9] On September 9, 2019, respondent resumed active status with the LSBA.

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

Respondent admitted he misused his client trust account, neglected his clients' legal matters, failed to communicate with his clients, and failed to refund approximately $15,000 in unearned attorney's fees to his clients. Therefore, the sole issue to be decided by this court is the appropriate measure of discipline to be imposed.

In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the

---

[8] Respondent's JLAP agreement does not incorporate the recommendation made by PWEC for psychiatric treatment.

[9] The ODC filed motions to supplement the record with (1) the report of respondent's PWEC evaluation, (2) the report of respondent's treatment at Palmetto and a copy of his JLAP agreement, and (3) a letter from JLAP addressing the current state of respondent's compliance with his recovery agreement. These motions are granted.

facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Both parties agree that the appropriate sanction is a suspension for one year and one day, but prior to oral argument (and prior to respondent's successful completion of a substance abuse treatment program and execution of a JLAP agreement), they diverged over whether this suspension should be fully deferred. We agree that in light of respondent's recent agreement to undergo the recommended treatment and to execute a JLAP agreement, sufficient safeguards are in place to protect the public and the sanction of a one year and one day suspension may be deferred, coupled with a probationary period corresponding with respondent's JLAP agreement to ensure he fulfills his obligations under the agreement. *See, e.g., In re: Tallon*, 08-0179 (La. 2/22/08), 774 So. 2d 1290.

Accordingly, we will adopt the sanction recommended by the disciplinary board and impose a one year and one day suspension, fully deferred, subject to a period of probation to coincide with the term of respondent's JLAP agreement.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Caleb Kent Aguillard, Louisiana Bar Roll number 32087, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that this suspension shall be deferred in its entirety and that respondent shall be placed on unsupervised probation for a period to coincide with the term of his recovery agreement with the Judges and Lawyers Assistance Program. Respondent's probation shall be conditioned on full compliance with the terms of his JLAP agreement. Any failure of respondent to comply with the

13

conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.